# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

IN RE:
**BURTON WIAND RECEIVERSHIP**
**CASES PENDING IN THE TAMPA**
**DIVISION OF THE MIDDLE**
**DISTRICT OF FLORIDA**

**Case Nos.: 8:05-cv-1856-T-27MSS**
**8:06-cv-609-T-27MSS**
**8:06-cv-611-T-27MSS**
**8:06-cv-618-T-27MSS**
**8:06-cv-631-T-27MSS**
**8:06-cv-643-T-27MSS**
**8:06-cv-647-T-27MSS**
**8:06-cv-648-T-27MSS**
**8:06-cv-649-T-27MSS**
**8:06-cv-650-T-27MSS**
**8:06-cv-651-T-27MSS**
**8:06-cv-699-T-27MSS**
**8:06-cv-703-T-27MSS**
**8:06-cv-706-T-27MSS**

_____/

## OMNIBUS ORDER

**BEFORE THE COURT** is the global Report and Recommendation of the Magistrate

Judge (*See e.g.*, Case No. 05-cv-1856, Dkt. 53) recommending that the Motions to Dismiss by

the respective Defendants in the following cases be granted:

| | |
|---|---|
| 8:05-cv-1856-T-27MSS | (Dkts. 25, 29) |
| 8:06-cv-609-T-27MSS | (Dkt. 8) |
| 8:06-cv-611-T-27MSS | (Dkt. 9) |
| 8:06-cv-618-T-27MSS | (Dkt. 7) |
| 8:06-cv-631-T-27MSS | (Dkt. 9) |
| 8:06-cv-643-T-27MSS | (Dkt. 10) |
| 8:06-cv-647-T-27MSS | (Dkt. 5) |
| 8:06-cv-648-T-27MSS | (Dkt. 9) |
| 8:06-cv-649-T-27MSS | (Dkt. 9) |
| 8:06-cv-650-T-27MSS | (Dkt. 15) |
| 8:06-cv-651-T-27MSS | (Dkt. 7) |
| 8:06-cv-699-T-27MSS | (Dkt. 12) |
| 8:06-cv-703-T-27MSS | (Dkt. 11) |
| 8:06-cv-706-T-27MSS | (Dkt. 18) |

1

The Receiver has filed a global objection to the Report and Recommendation in each of the fourteen cases (*See e.g.*, Case No. 05-cv-1856, Dkt. 54), and Defendants have filed separate responses to the Receiver's objection.  Upon consideration, the Court adopts the Report and Recommendation in part as modified herein and rejects it in part as to the Receiver's claims for unjust enrichment.

### *Background*

The Report and Recommendation contains a cogent description of the relevant factual and procedural background.  Briefly stated, the perpetrator of an alleged Ponzi scheme, Howard Waxenberg, made "returns of principal" to certain investors in the months preceding his death, while other investors received no payments during this time.  Following Waxenberg's death and upon commencement of an action by the Securities and Exchange Commission, Burton W. Wiand ("the Receiver") was appointed as receiver for Howard Waxenberg Trading, L.L.C., HKW Trading LLC, HKW Trading Fund I LLC, Downing & Associates Technical Analysis, and the Estate of Howard Waxenberg (collectively, "the Receivership Entities"). The Receiver commenced the actions now before this Court, seeking to recover the distributions made to investors in order to redistribute the recovered amounts *pro rata* among all of the investors in the alleged Ponzi scheme. The Receiver brings claims against the investors pursuant to the Florida Uniform Fraudulent Transfer Act, and, in the alternative, for unjust enrichment and disgorgement.

### *Standard*

A court may grant a motion to dismiss "only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Rule 8 of the Federal Rules of Civil Procedure requires only that Plaintiff provide a short and plain statement of the claim showing that he is entitled to relief. A plaintiff is not required to "allege a specific fact to cover every element or allege with precision each element of a claim." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

***Discussion***

*1.   Standing*

Defendants initially contend that the Receiver lacks standing to bring an action pursuant to the Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. §§ 726.101 *et seq.*, which allows creditors to set aside transfers by a debtor that are found to be fraudulent, as determined under statutory criteria. Defendants argue that the true parties in interest are the investors who were injured by the Ponzi scheme, not the Receiver who represents the Receivership Entities allegedly used by Waxenberg to effect the scheme.

The inquiry as to whether a particular plaintiff has standing to bring an action is an initial jurisdictional question based on both constitutional and prudential concerns. To meet the constitutional requirements for standing, a plaintiff must show that: (1) it suffered or is immediately likely to suffer an injury in fact; (2) a causal connection exists between the injury and the alleged conduct; and (3) there is a likelihood that a favorable judicial decision will

3

redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in fact means that the plaintiff has suffered or is likely to suffer an injury that affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560-561. In addition, prudential standing concerns discourage judicial review when the plaintiff: (1) asserts the legal rights or interests of third parties; (2) alleges a generalized grievance; or (3) asserts an interest outside "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982).

The seminal case on the question of whether a court-appointed receiver has standing to set aside allegedly fraudulent transfers by a perpetrator of a Ponzi scheme is *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1993). In addressing standing, the Seventh Circuit Court of Appeals held that the transfers made by the perpetrator of the Ponzi scheme "removed assets from the corporations for an unauthorized purpose and by doing so injured the corporations." *Scholes*, 56 F.3d at 754. Because the corporation was injured by the diversion of its assets, the receiver, standing in the shoes of the corporation, had standing to set aside the fraudulent transfers.[1]

Numerous courts have found that an equity receiver has standing to maintain fraudulent transfer claims against the recipients of money acquired in a Ponzi scheme under various states'

---

[1] "An analysis of standing does not include an analysis of equitable defenses, such as *in pari delicto*." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006) (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 347 (3rd Cir. 2001)). Although *Scholes* combined the standing analysis and the question of whether the action was barred by *in pari delicto*, this Court addresses the applicability of this equitable doctrine in a later section.

Uniform Fraudulent Transfer Acts.[2]  Other courts have addressed fraudulent transfer claims under similar circumstances, without specifically evaluating the receivers' standing.[3]

In the cases now before the Court, the Receiver has alleged that "the funds paid to the Defendants were diverted assets of the Receivership Entities and the other investors" and that the "receiver brings this action against the Defendants on behalf of the Receivership Entities and their investors to recover the distribution(s)." (*See e.g.*, Case No. 06-cv-609, Dkt. 1, ¶¶ 22-23). The Court finds that the Receiver has standing to bring a FUFTA claim on behalf of the Receivership Entities because the Receivership Entities were injured by the diversion of their funds. *Scholes*, 56 F.3d at 754; *Knauer v. Jonathon Roberts Fin. Group*, 348 F.3d 230, 234 (7th Cir. 2003).  However, in attempting to recover "on behalf of . . . investors," the Receiver purports

---

[2] *See Obermaier v. Arnett*, No. 2:02-cv-111, 2002 WL 31654535 (M.D. Fla. Nov. 20, 2002) (citing *Scholes* and finding Receiver had standing under FUFTA); *Quilling v. Cristell*, Case No. 3:04-cv-252, 2006 WL 316981 (W.D.N.C. Feb. 9, 2006) (citing *Scholes* and finding that receiver had standing under either North Carolina or Florida's UFTA); *see also Marwil v. Farah*, No. 1:03-cv-482, 2003 WL 23095657 (S.D. Ind. Dec. 11, 2003) (citing *Scholes* and finding receiver had standing to pursue equitable disgorgement claim); *O'Halloran v. First Union Nat's Bank of Fla.*, 350 F.3d 1197, 1203-04 (11th Cir. 2003) (bankruptcy trustee had standing to bring tort claims against bank in which Ponzi funds were deposited because corporation was legally injured by withdrawals from accounts).

Other cases have found that the receiver has standing by virtue of its authority to act on behalf of creditors pursuant to state law, authority granted by the order appointing the receiver, or from the broader language of the relevant UFTA. *See Moldo v. World Net Develop. Group, Inc.*, Case No. 98-cv-7475, 2000 U.S. Dist. LEXIS 19092 (C.D. Cal. Sept. 20, 2000) (finding receiver in FTC proceeding had standing as an assignee of creditors under California's UFTA); *Warfield v. Boone*, No. 3:00-cv-272, 2001 WL 256172 (N.D. Tex. March 8, 2001) (receiver has standing to sue on behalf of creditors); *Terry v. Dowdell*, No. 3:04-cv-67, 2006 WL 2360933, (W.D. Va. Aug. 11, 2006) (receiver was authorized by appointment order to pursue claims on investors' behalf); *Stenger v. World Harvest Church, Inc.*, No. 1:04-cv-151, 2006 WL 870310 *4 n.6 (N.D. Ga. March 31, 2006) (noting that "and others" language in statute precluded argument that suit may be brought only by creditors).

At least one court has found that a Receiver was unable to recover Ponzi scheme distributions from investors. *See Johnson v. Studholme*, 618 F. Supp. 1347 (D. Colo. 1985).  *Johnson*, however, involved claims for unjust enrichment and conversion, not a claim pursuant to UFTA.

[3] *Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) (affirming summary judgment in favor of receiver against two transferees under Washington's UFTA); *Wing v. Yager*, No. 1:03-CV-54, 2003 WL 23354487 (D. Utah 2003); *Quilling v. Stark*, No. 3:05-cv-1976, 2007 WL 415351 (N.D. Tex. Feb. 7, 2007).

to assert rights of third parties. Accordingly, to the extent the Receiver seeks to recover "on behalf of investors," the Receiver lacks standing to do so.

### 2. *Failure to State a Claim under FUFTA*

FUFTA provides that certain transfers made by a debtor to defraud the debtor's present and future creditors are void. Specifically, the Act provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. Fla. Stat. §726.105.

The Magistrate recommends that the Receiver's FUFTA claims be dismissed because the Receiver failed to allege that he is a "creditor" under the statutory definition. The Magistrate is correct.[4]

FUFTA defines "creditor" as "a person who has a claim," and it defines "debtor" as "a person who is liable on a claim." Fla. Stat. § 726.102(4),(6). "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

---

[4] Although the Magistrate's discussion was premised on standing, this Court analyzes the issue under Fed. R. Civ. P. 12(b)(6).

Fla. Stat. § 726.102(3). The Florida Supreme Court has noted that the statutory definition of "claim" is "broadly constructed" and "may be maintained even though 'contingent' and not yet reduced to judgment." *Friedman v. Heart Inst. of Port St. Lucie*, 863 So. 2d 189, 192 (Fla. 2003).

"To utilize the protections of chapter 726 . . . a plaintiff must show that he or she has a 'claim' which qualifies the party as a 'creditor.'" *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004). As the Magistrate Judge noted, the Illinois fraudulent conveyance statute before the court in *Scholes v. Lehman* allowed creditors as well as "other persons" to set aside fraudulent conveyances. *Scholes*, 56 F.3d at 753. Therefore, the court was not confronted with the question of whether the receiver was a "creditor." The Seventh Circuit had occasion to address this question two years earlier, however, under Arkansas' Uniform Fraudulent Transfer Act. *See Southmark Corp. v. Cagan*, 999 F.2d 216 (7th Cir. 1993). The court held that the receivership entities were "creditors" because they had "claims" against the debtor -- which was also in receivership -- for looting and fraud. *Id*. at 222.[5] The court concluded that: "[a]s 'creditors' with 'claims,' therefore, the partners (via their receiver, Cagan) may invoke the rules Arkansas has enacted to regulate fraudulent transfers." *Id*. at 222; *see also Dillon v. Axxsys Int'l, Inc.*, 185 Fed. App'x 823, 830 (11th Cir. 2006) (by virtue of investors' claim for fraudulent inducement to invest in corporation, investors were creditors with a claim).

Here, the Receiver has not alleged that the Receivership Entities are "creditors," the nature of the Receiverships Entities' "claim," or who the "debtor" is. Although Rule 12(b)(6)

---

[5] The debtor, Equity, was alleged to have incurred a $3.5 million dollar obligation on a mortgage note knowing it had insufficient assets. The investors in the property, the Diamondhead partnerships, which the receiver was representing, had "future" claims at the time of the transfer, arising from the fraud and looting by Equity's directors.

does not require a defendant to "allege with precision each element of a claim," *Roe*, 253 F.3d at 683, facts must be alleged to support the elements of each claim. Particularly where, as here, the Receiver purports to bring a statutory claim, the allegations must fairly meet the statutory requisites. *See Byrne v. Nezhat*, 261 F.3d 1075, 1109 (11th Cir. 2001).

The relevant allegations, which are substantially similar in all of the complaints,[6] are:

> The Defendants received such an inequitable distribution from Waxenberg and the Receivership Entities in the few months immediately preceding Waxenberg's demise. Specifically, on or about [*date*], the Defendant received [*amount*] by check from [*Receivership Entity*] in connection with its investment. To allow the Defendant to keep this entire distribution be inequitable and unjust to the investors of the Receivership Entities as a whole. As such, the Receiver seeks the return of [*amount*].

> The monies Waxenberg and the Receivership Entities transferred or distributed to the Defendant were acquired, divested, and/or misappropriated by Waxenberg as result of his operation of the Receivership Entities in the above-described Ponzi scheme. Thus, the funds paid to the Defendant were diverted assets of the Receivership Entities and the other investors.

> Receiver brings this action against the Defendant on behalf of the Receivership Entities and their investors to recover the distribution made to the Defendant so the Receiver may equitably redistribute the funds collected by the Receivership in an appropriate manner.

> \* \* \* \*

> None of the Receivership Entities received a reasonably equivalent value from the Defendant, or anyone acting on behalf of the Defendant, in exchange for the transfer. Nor did the Receivership Entities directly or indirectly benefit from

---

[6] In the majority of the complaints which are the subject of these motions to dismiss, the Receiver has alleged the amount of the distribution, the date, and the Receivership Entity that made the distribution, which the Court presumes satisfies the heightened pleading requirements of Rule 9(b). *See Quilling v. Stark*, (2006) (finding that complaint satisfied Rule 9(b) where it alleged the amount of the transfers, the date, the persons who made them, and the persons who received). However, the first quoted paragraph varies in the complaints filed in Case Nos. 05-cv-1856, 06-cv-699, 06-cv-703, and 06-cv-706. Those complaints do not include allegations pertaining to the dates of the distributions or the Entities that transferred the money. <u>These deficiencies shall be addressed should the Receiver seek to amend these complaints</u>.

the transfer. The transfer of monies to the Defendant from Waxenberg and the Receivership Entities was made without valid consideration.

At all material times, neither Waxenberg nor the Receivership Entities had sufficient assets to meet their obligations.

Throughout the course of the Ponzi scheme's operation and specifically in connection with the transfer at issue here, Waxenberg and the Receivership Entities intended to incur and did incur debts beyond the Receivership Entities' ability to pay as they became due as a result of the transfer.

The Receiver is entitled to avoid and recover the transfer of monies from Waxenberg and the Receivership Entities to the Defendant as an actual or constructively fraudulent conveyance. (*See e.g.*, Case No. 06-cv-609, Dkt. 1, ¶¶ 21-23, 26-29).

These allegations do not include the statutory requirements of FUFTA, and to some extent, are inconsistent therewith. As noted, the Receiver has not alleged that he or the Receivership Entities are "creditors," and if so, *which* entity is a "creditor." Nor does he identify any alleged "debtor(s)." More importantly, the Receiver fails to allege what "claim" the unidentified "creditor" possesses against the unidentified "debtor." *Cf. Southmark Corp. v. Cagan*, 999 F.2d 216, 222 (7th Cir. 1993).[7] Accordingly, the Receiver's claims under FUFTA are subject to dismissal without prejudice, for failure to state a claim under FUFTA.[8]

### 3. *Unjust enrichment*

The Receiver has pled an unjust enrichment claim in the alternative, to the extent FUFTA does not provide an adequate legal remedy. (*See e.g.*, Case No. 06-cv-609, Dkt. 1, ¶ 31). In contrast to other equitable claims, however, an unjust enrichment claim may be maintained even

---

[7] The Receiver does bring an unjust enrichment claim against the Defendant-transferees. That claim is not, however, against the debtor-transferor, which is defined by FUFTA as the person who is liable on a claim.

[8] Defendants have argued that the Receiver cannot recover principal amounts under FUFTA. Because this argument may implicate the FUFTA "good faith" defense, Fla. Stat. § 726.109, it is not proper for resolution on a motion to dismiss.

though a remedy at law exists. *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998). To state a claim for unjust enrichment under Florida law, a plaintiff must allege facts that, if taken as true, would show: (1) a benefit was conferred upon the defendant; (2) the defendant either requested the benefit or knowingly and voluntarily accepted it; (3) a benefit flowed to the defendant; and (4) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 303 (Fla. 1st DCA 1999).

In ten of the complaints at issue in these motions to dismiss, the Receiver seeks a return of an amount equal to the initial amount invested by the respective defendants. (*See* Report and Recommendation, Appendices A-C). In three cases, the Receiver seeks an amount that includes the principal amount and excess profits. Defendants argue that the Receiver may not, under a theory of unjust enrichment, recover the principal amounts originally invested. Defendants note that even in cases that have authorized FUFTA or unjust enrichment claims by receivers, the receivers have sought only amounts in excess of what the investors initially invested. *See e.g., Scholes*, 56 F.3d at 757-58 (receiver only seeking the "difference between what [investor] put in at the beginning and what he had at the end"); *Wing*, 2003 WL 23354487 at *1 (receiver sought return of profit); *Terry v. June*, 432 F. Supp. 2d at 642-43 (if good faith defense is established, transferee may retain investment principal, but not fictitious profits); *Mays v. Lombard*, No. 3:97-cv-1010, 1998 WL 386159 (N.D. Texas July 2, 1998) (receiver seeking amount transferred in excess of invested amount); *see also Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626, 629 (Fla. 3d DCA 1989) (applying the Florida Enforcement of Foreign Judgments Act and finding that "it is *not* fraudulent to give the funds to some but not all exiting creditors, even

though the effect might be to injure to prejudice an existing creditors who was not chosen to receive the debtor's largesse").

On the other hand, the Receiver contends that it is inequitable for Defendants to retain their distributions given that other investors received no distributions. (*See e.g.*, Case No. 06-cv-609, Dkt. 1, ¶¶ 34-35). The Receiver alleges that his authority to recover principal amounts derives from the SEC's authority in an SEC enforcement action, in which at least one court has required investors to disgorge their original investment. *See SEC v. George*, 426 F.3d 786, 799 (requiring relief defendants to return all amounts received, including principal, for *pro rata* distribution among all investors in Ponzi scheme).

The Court concludes that it is premature to address the legal merits of the Receiver's unjust enrichment claims on motions to dismiss. The Receiver has complied with the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. While the Magistrate's conclusions may ultimately prove correct, this Court is reluctant to dismiss a claim that is equitable in nature at this stage of the proceedings.[9]

### 4.   *In pari delicto*

Defendants also argue that the Receiver's claims are barred because the Receiver is *in pari delicto*. This doctrine, in its complete form, *"in pari delicto, potior est conditio defendentis,"* provides that where the wrong of one party equals that of the other, the defendant is in the stronger position. 22 Fl. Jur. Equity § 76.

---

[9] The Court is not persuaded by the arguments of certain Defendants that the Receiver's unjust enrichment claim is barred because a valid contract allegedly existed between the parties. At this stage of the proceedings, the contracts are disputed (*See* Global Opposition to MTD at 28) and the copies submitted with the motions to dismiss are not executed. *Bloom v. Frese*, 123 So. 2d 47, 49 (Fla. App. 1960) (defendant has burden of proving express contract in defense to action for unjust enrichment). This argument is more properly made on a dispositive motion.

In *Scholes v. Lehman*, the Seventh Circuit Court of Appeals observed that the defense of *in pari delicto* "loses its sting" in a fraudulent transfer action brought by a receiver because the entity is "cleansed" by the appointment of the receiver. *Scholes*, 56 F.3d at 754; *see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, (11th Cir. 2006) (noting that action by bankruptcy trustee to set aside fraudulent conveyances is an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy under *Scholes*). Accordingly, in *Scholes*, the court found that the receiver was not prevented from seeking to set aside fraudulent transfers.

Florida's Second District Court of Appeals has acknowledged the holding in *Scholes*: "We are inclined to believe that the receiver may also pursue certain claims that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d DCA 2003) (citing *Scholes*, 56 F.3d at 754) (hereinafter, "*Dean Witter*"). The court reconciled *Scholes* and its progeny with other cases in which receivers and bankruptcy trustees have been prohibited from recovering damages under common law tort theories:

> [W]e believe it is helpful to differentiate between two types of claims that may arise in this context, First, there are actions that the corporation, which has been 'cleansed' through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership. This was the case in *Scholes* and *Schact*. Distinct from these claims, however, are common law tort claims against third parties to recover damages in the name or shoes of the corporation for the fraud perpetrated by the corporation's insiders. These are the types of claims barred in *Feltman*. When the entities in receivership do not include a corporation that has at least one honest member of the board of directors or an innocent stockholder, we do not perceive a method to separate the fraud and intentional torts of the insiders from those of the corporation itself. *Dean Witter*, 865 So. 2d at 551.

12

Florida courts have accordingly held that *in pari delicto* bars receivers from pursuing independent tort claims for damages, in cases where there is not "at least one honest member[] of the board of directors or an innocent stockholder." *See also Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004) (holding that FUFTA does not create "an independent tort for damages," such as liability for aiding and abetting a fraudulent transfer.)

On the basis of these authorities, the defense of *in pari delicto* does not bar a FUFTA claim by the Receiver, to the extent he amends and repleads his FUFTA claims. By contrast, the Receiver's claim for unjust enrichment does not fall squarely into either of the categories delineated by *Dean Witter*. *Dean Witter* did not, however, limit a receiver's methods of recovery to FUFTA actions. An unjust enrichment claim may be properly categorized as an action "directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation." *Dean Witter*, 865 So. 2d at 551.

In determining the application of *in pari delicto* to a given case, "a court first determines whether plaintiff's guilt is far less in degree than defendant's, so as to make the doctrine inapplicable. If plaintiff's guilt is not far less, the court inquires if applying the doctrine would be contrary to public policy." *Turner v. Anderson*, 704 So. 2d 748, 750 (Fla. 4th DCA 1998) (quoting *Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot,* 312 Pa. Super. 125, 458 A.2d 545 (1983)). Confining its analysis to the allegations of the complaints, this Court is unable to determine the relative fault of the parties. Therefore, this Court respectfully disagrees with the Magistrate and finds that the defense of *in pari delicto* is not apparent from the face of the complaint.

Based on the foregoing, the Court finds that the Defendants' motion to dismiss the Receiver's unjust enrichment claims should be denied.

### 5.    *Estate of Waxenberg and Downing & Associates Technical Analysis*

The Magistrate recommended that the claims by the Receiver on behalf of the Estate of Howard Waxenberg and Downing & Associates Technical Analysis ("DATA") be dismissed with prejudice because these entities are not separate legal entities, but are, in fact, incarnations of Howard Waxenberg. Thus, they do not have a separate legal identity capable of "cleansing" under the *Scholes* rationale. The Receiver has not objected to the dismissal of claims on behalf of the Estate of Howard Waxenberg, although he does object to the dismissal of DATA.

The Receiver conceded during the hearing on these motions before the Magistrate Judge that DATA is a "doing business as" name for Waxenberg "and of course that would not be separate and distinct." (Tr. 20, 108). *See Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997) (distinguishing *Scholes* and holding that receiver of a d/b/a entity could not sue transferees for a fraudulent transfer); *cf. Commodity Futures Trading Comm. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1482 (pursuant to Fed. R. Civ. P. 17(b), receiver was proper party to sue on behalf of a commodities pool, an unincorporated association, that was recognized as a separate legal entity). The Receiver now argues that DATA is an unincorporated association under Florida law, although no allegations in the complaints support this assertion. *Peoples Gas Sys., Inc. v. Acme Gas Corp.*, 689 So. 2d 292, 298 n.8 (Fla. 3d DCA 1997) (noting that an unicorporated association is generally "created and formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose"); *Prewitt Enter., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 922 n.6 (11th Cir. 2003) (same).

To the extent the Receiver can plead facts, in good faith, showing that DATA was a separate legal entity that was injured by disbursements of its funds for unauthorized purposes, the Receiver may include DATA as a party-plaintiff.   DATA is therefore dismissed *without prejudice* as a party to this action.   The Estate of Howard Waxenberg is dismissed with prejudice.

**6.     *Disgorgement***

The Court adopts the Magistrate's finding that disgorgement is a remedy for an unjust enrichment action, not an independent cause of action.   Therefore, this claim is dismissed with prejudice.

### *Conclusion*

After careful consideration of the Report and Recommendation, the Receiver's objections, and Defendants' responses, in conjunction with an independent examination of the file, the Court is of the opinion that the Report and Recommendation should be adopted in part as modified herein and rejected in part as it relates to the Receiver's claims for unjust enrichment.

Accordingly, it is

**ORDERED AND ADJUDGED** that

1)     The Report and Recommendations in the following cases are adopted as modified herein and rejected in part as they relate to the Receiver's claims for unjust enrichment:

| | |
|---|---|
| 8:05-cv-1856-T-27MSS | (Dkt. 53) |
| 8:06-cv-609-T-27MSS | (Dkt. 26) |
| 8:06-cv-611-T-27MSS | (Dkt. 25) |
| 8:06-cv-618-T-27MSS | (Dkt. 27) |
| 8:06-cv-631-T-27MSS | (Dkt. 28) |
| 8:06-cv-643-T-27MSS | (Dkt. 28) |
| 8:06-cv-647-T-27MSS | (Dkt. 31) |
| 8:06-cv-648-T-27MSS | (Dkt. 27) |
| 8:06-cv-649-T-27MSS | (Dkt. 31) |

| | |
|---|---|
| 8:06-cv-650-T-27MSS | (Dkt. 36) |
| 8:06-cv-651-T-27MSS | (Dkt. 27) |
| 8:06-cv-699-T-27MSS | (Dkt. 30) |
| 8:06-cv-703-T-27MSS | (Dkt. 31) |

2)     The Motions to Dismiss in the following cases are **GRANTED IN PART** and

**DENIED IN PART**:

| | |
|---|---|
| 8:05-cv-1856-T-27MSS | (Dkts. 25, 29)[10] |
| 8:06-cv-609-T-27MSS | (Dkt. 8) |
| 8:06-cv-611-T-27MSS | (Dkt. 9) |
| 8:06-cv-618-T-27MSS | (Dkt. 7) |
| 8:06-cv-631-T-27MSS | (Dkt. 9) |
| 8:06-cv-643-T-27MSS | (Dkt. 10) |
| 8:06-cv-647-T-27MSS | (Dkt. 5) |
| 8:06-cv-648-T-27MSS | (Dkt. 9) |
| 8:06-cv-649-T-27MSS | (Dkt. 9) |
| 8:06-cv-650-T-27MSS | (Dkt. 15) |
| 8:06-cv-651-T-27MSS | (Dkt. 7) |
| 8:06-cv-699-T-27MSS | (Dkt. 12) |
| 8:06-cv-703-T-27MSS | (Dkt. 11) |

Specifically: (a) claims pursuant to FUFTA (Count I) are dismissed without prejudice; (b) claims for disgorgement (Count III) are dismissed with prejudice; (c) the Estate of Howard Waxenberg is dismissed with prejudice as a party to these actions; (d) Downing & Associates Technical Analysis is dismissed without prejudice as a party to these actions.

3)     While the Court finds that the motion to dismiss (Dkt. 18) in Case No. 8:06-cv-706-T-27MSS should be granted in part and denied in part, as set forth in paragraph 2, the Court **DEFERS RULING** on the motion to dismiss, pending a resolution of Defendants' arguments regarding lack of personal jurisdiction and improper venue. The Motion to Dismiss (Dkt. 18) is referred back to the Magistrate Judge for a Report and Recommendation on Defendants'

---

[10] The Zelda Waxenberg Family Trust filed Dkt. 29 after it was properly served and adopted the arguments of Dkt. 25. The arguments in Dkt. 25 relating to service of process are therefore moot. The arguments relating to the fourth claim for equitable accounting, which is essentially a discovery request dependent on the success of the underlying claims, will be addressed if the Receiver chooses to amend the complaint.

arguments regarding lack of personal jurisdiction and improper venue. Pending the issuance of a

Report and Recommendation on these issues, Case No. 06-cv-706 is **STAYED**.[11]

    4)    The Receiver is granted leave to amend the complaints in actions addressed by

this Order, with the exception of Case No. 06-cv-706, within thirty (30) days of the date of this

Order.

    **DONE AND ORDERED** in Tampa, Florida, on this _27th_ day of March, 2007.

                        **JAMES D. WHITTEMORE**
                        **United States District Judge**

Copies to:
Counsel of Record

---

[11] The Defendants in Case No. 06-cv-706 also argued that the statute of limitations barred the Receiver's claims against them.  In part because the Receiver has not identified in its Complaint the date of the allegedly fraudulent transfers, as noted in note 5, *infra*, the Magistrate Judge did not address this argument.